# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:13-cv-447-MOC-DSC

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) **MEMORANDUM AND RECOMMENDATION**<br>)<br>) |
| v. | )<br>) |
| BANK OF AMERICA CORPORATION, et. al., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**THIS MATTER** is before the Court on Defendants' "Motion to Dismiss Plaintiff's Complaint" (document #14), as well as the parties' briefs and exhibits. See documents ##14, 27 and 28.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion to Dismiss be denied, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is an action brought by the Securities and Exchange Commission ("SEC") seeking an injunction, civil penalties and other relief for violations of Sections 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) & 77q(a)(3), and Section 5(b)(1) of the Securities Act, 15 U.S.C. § 77e(b)(1). Investors in residential mortgage backed securities ("RMBS") received

certificates giving them the rights to payments from a pool of residential mortgages that had been offered and underwritten by Defendants in a transaction identified as BOAMS 2008-A.

The final loan pool included 1,191 "jumbo" adjustable rate mortgages originated between July and November 2007.[1] The borrowers had a weighted average credit score of 750. Most had more than twenty percent equity in their property. A majority of the loans were secured by the borrower's primary residence. The mortgages in the loan pool represented approximately $855 million in principal.

Accepting the factual allegations of the Complaint as true, Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. f/k/a/ Banc of America Securities LLC ("BAS") provided preliminary information about the loan pool to Wachovia and the Federal Home Loan Bank of San Francisco ("FHLB-SF") in December 2007. This information included the fact that approximately seventy percent of the loan pool originated from the "wholesale channel," or third party mortgage brokers.

On January 29, 2008, Defendant Banc of America Mortgage Securities, Inc. ("BOAMS") filed a Prospectus and Prospectus Supplement. They described the characteristics of the mortgages and disclosed that some had originated in the wholesale channel. They also stated that the loans were underwritten "materially in accordance" with the Bank's general underwriting standards, which allowed loan underwriters to utilize "compensating factors to offset one or more features of the loan transaction that may not specifically comply with the [underwriting] guidelines." The Prospectus Supplement also disclosed various risks, including the deteriorating market for mortgage backed securities, increased likelihood of prepayment, geographic concentration of the loans, and the effects of mortgage defaults or delinquencies on returns.

---

[1] At the time of the transaction, a "jumbo" mortgage generally had principal of more than $417,000.

The Complaint alleges that "[b]y the time the BOAMS 2008-A was being offered and sold, the then CEO of BAC had referred to wholesale loans as 'toxic waste' and BANA had closed its wholesale channel." Complaint ¶ 8. Defendants transferred the risks to investors in order to avoid any losses associated with the loans comprising BOAMS 2008-A. The SEC alleges that Defendants misled potential investors by failing to disclose that seventy-two percent of the mortgages originated in the wholesale channel as well as the risks associated with those types of loans. Investors were directed to information in prior RMBS offerings as indicative of the characteristics of BOAMS 2008-A. Defendants knew that the average concentration of wholesale loans in the prior offerings was only forty-one percent. The SEC further alleges that a significant number of the loans were not underwritten materially in accordance with Defendants' guidelines. Finally, the SEC alleges that Defendants made material misrepresentations and omissions about the loans in BOAMS 2008-A in the loan tapes and summaries provided to investors and rating agencies.

BOAMS sold the certificates to investors in early 2008. Wachovia and FHLB-SF bought approximately ninety-eight percent of the securities offered.

In 2008 and 2009, the residential real estate market experienced a downturn throughout the United States and many RMBS suffered significant losses, including BOAMS 2008-A.

In 2010, the SEC and later the United States Department of Justice initiated investigations of Defendants' RMBS business.

On August 6, 2013, the SEC filed a Complaint alleging violations of Sections 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) & 77q(a)(3), and Section 5(b)(1) of the Securities Act, 15 U.S.C. § 77e(b)(1).

On November 8, 2013, Defendants filed their Motion to Dismiss, which has been fully

briefed and is ripe for determination.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical,

4

code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

### B. Claims Under Section 17(a)(2) and 17(a)(3)

Section 17(a)(2) makes it unlawful for any person, in the offer or sale of securities, to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. 15 U.S.C. § 77q(a)(2). Section 17(a)(3) prohibits any person, in the offer or sale of any security, from engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a)(3). Claims under these provisions do not require proof of scienter. Negligence is sufficient. Aaron v. SEC, 446 U.S. 680, 697 (1980). Defendants contend that the Complaint fails to plead sufficient facts to establish materiality or negligence.

A complaint should be dismissed based upon materiality only if the alleged misstatements or omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Fourth Circuit has stated:

> we are mindful that, "[i]n general, the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the court on a motion to dismiss. Thus, we review the complaint only to determine that it pleads the existence of such statements and presents a plausible jury question of materiality.

Dunn v. Borta, 369 F.3d 421, 427 (4th Cir. 2004) (citation omitted) (reasonable investor standard requires "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable [investor].") Materiality is determined based upon whether "there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." Longman v. Food Lion, Inc., 197 F.3d 675, 683 (4th Cir. 1999).

An omission is misleading if it creates an impression of a state of facts that differs in a material way from the one that actually exists. Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002). See also New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC, 709 F.3d 109, 126 (2d Cir 2013)( "[a] reasonable investor can independently analyze how a security will perform in the market, but she cannot compensate for the fact that she has not received what she was told to expect"); Dodona I, LLC v. Goldman, Sachs & Co., 847 F. Supp. 2d 624, 648 (S.D.N.Y. 2012) ("Ultimately, an incomplete or misleading disclosure

may be just as damaging as total concealment"); Schlifke v. Seafirst Corp., 866 F.2d 935, 944 (7th Cir. 1989) ("[I]ncomplete disclosures, or 'half-truths,' implicate a duty to disclose whatever additional information is necessary to rectify the misleading statements").

General disclaimers are insufficient to overcome the effect of more specific material misstatements or omissions. See La Grasta v. First Union Sec., Inc., 358 F.3d 840, 851 (11th Cir. 2004) ( disclaimers that "were not explicit or specific as to the fraud alleged" do not provide basis to dismiss complaint).

Finally, it is not necessary that the Complaint plead every possible instance of fraud in detail. U.S. ex rel. Franklin v. Parke–Davis, Div. of Warner–Lambert Co., 147 F. Supp. 2d 39, 49 (D. Mass. 2001) ( where the allegations in a complaint are "complex and far-reaching, pleading every instance of fraud would be extremely ungainly, if not impossible").

The Complaint alleges sufficient facts to establish that Defendants negligently made material misrepresentations and omissions here. Defendants' decision to give the wholesale channel information to Wachovia and FHLB-SF raises the inference that Defendants knew or reasonably should have known that this information was material. Those investors considered the origination information "important in deciding whether to buy the security." In re Pec Solutions, Inc. Sec. Litig., 418 F.3d 379, 387 (4th Cir. 2005) ("While on a motion to dismiss we assume all the well-pled allegations of plaintiffs are true and draw reasonable inferences in their favor"). Defendants' public disclosures directed investors to supposedly comparable RMBS offerings where only forty-two percent of the loans originated from the wholesale channel. The Complaint alleges that contrary to Defendants' representations, a significant number of the loans were not underwritten materially in accordance with their guidelines. The Complaint also pleads that Defendants made material misrepresentations and omissions of key statistics in loan tapes and

7

summaries.

The SEC alleges that Defendants engaged in a course of conduct of misrepresenting and failing to disclose the true nature of the loans comprising BOAMS 2008-A, thereby transferring any risks associated with the wholesale channel loans to investors. These allegations are sufficient to withstand dismissal of the Section 17(a)(3) claim. See, e.g., SEC v. Stoker, 865 F. Supp. 2d 457, 467-68 (S.D.N.Y. 2012) (denying motion to dismiss Section 17(a)(3) claim where complaint alleged that transaction was designed to allow Citigroup to profit from a downturn in the economy).

For these and the other reasons stated in the SEC's brief, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>denied</u> as to the Section 17(a)(2) and 17(a)(3) claims.

### C. Claims Under Section 5

Section 5(b)(1) requires that any "prospectus" communicated in interstate commerce comply with the requirements of Section 10 of the Securities Act. 15 U.S.C. § 77e(b)(1). Specifically, Section 10(b) requires that all prospectuses be filed with the Commission as part of the registration statement. Id. § 77j(b). Section 2(a)(10) of the Securities Act defines "prospectus" broadly to include "any … communication … which offers any security for sale…." Id. § 77(b)(a)(10). Section 2(a)(3) further defines "offer" and "offer for sale" to include "every attempt to offer or dispose of … a security or interest in a security…." Id. § 77(b)(a)(3). Once an investor indicates that it will purchase an asset-backed security, "all materials relating to such class that are or <u>have been provided</u> to such prospective investor" … must be filed." Securities Act Rule 426(b) (emphasis added). "Filing also is required of such materials relating

8

to a class of securities, <u>whether or not final terms of all classes had been established</u>, as to which a prospective investor had indicated an interest." Securities Offering Reform, Sec. Act. Rel. No. 33-8591, at p. 118 (2005) (emphasis added).

The Complaint adequately alleges that Defendants violated Section 5 of the Securities Act by disclosing the information about the wholesale channel loans to Wachovia and FHLB-SF who later purchased a portion of BOAMS 2008-A in the public offering. It is undisputed that Defendants elected not to file this "preliminary information" publicly with the Commission.

For these reasons and the other reasons stated in the SEC's brief, the undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>denied</u> as to the Section 5 claim.

## III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants' "Motion to Dismiss Plaintiff's Complaint" (document #14) be **DENIED**.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also

preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: March 31, 2014

David S. Cayer
United States Magistrate Judge