UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:13-cv-00447-MOC-DSC

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** )<br>)<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>**BANC OF AMERICA MORTGAGE SECURITIES, INC.**<br>**BANK OF AMERICA, N.A.**<br>**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants. ) | ORDER |

**THIS MATTER** is before the court on review of a Memorandum and Recommendation issued in this matter. In the Memorandum and Recommendation, the magistrate judge recommended denial of defendants' Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, and advised the parties of the right to file objections within 14 days, all in accordance with 28, United States Code, Section 636(b)(1)(c). Objections have been filed within the time allowed, oral arguments have been heard on those objections, and the court has considered the underlying Motion to Dismiss *de novo*.

### FINDINGS and CONCLUSIONS

**I.     Applicable Standard**

The *Federal Magistrates Act of 1979,* as amended, provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d

1

198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the court has conducted a careful review of the magistrate judge's recommendation.

## II.   Factual Setting

For the limited purpose of considering the Motion to Dismiss, the court has considered as true the well-pled facts contained in the Complaint. Fed.R.Civ.P. 12(b)(6). In the interests of judicial economy, the court has summarized the facts as alleged in this case and in the '446 case together. Such recitation is not intended to bind this court or the parties in any way in this case or in the '446 case.

According to the Complaint, defendants originated, securitized, and sold billions of dollars in home loans by late 2007. By that same date, however, senior employees and management of the defendants knew that despite such uptick in its mortgage loan origination business, a significant percentage of the mortgages originated by the bank failed to materially comply with the bank's underwriting standards. Not only did they know that there were problems in loan origination, there were problems in servicing those loans as a significant percentage of those loans were performing poorly.

2

According to the SEC, the problem with the loans was one created by the bank: rather than reward its employees for originating quality loans (to wit, loans that were taken out by qualified borrowers who brought equity and collateral to the table), the bank was rewarding quantity by giving bonuses to employees who surpassed mortgage production targets. Apparently, these employees were able to surpass goals by bringing in unqualified borrowers who took out loans they either could not pay back because they lacked sufficient income or had no incentive to pay back because they had no skin in the game, or both. Thus, by the end of 2007, the bank knew the loans it was repackaging for sale to others in the form of "Residential Mortgage Backed Securities" ("RMBS") were not the investment grade products investors were looking to add to their portfolios. The SEC contends that the bank's pre-2008 zealousness in originating loans and earning fees was so fervent that it resulted in the bank directing its employees that it was not their job to look for fraud when originating home mortgage loans.

The SEC contends that not only were underwriting practices critical in originating loans, those practices were a critical factor for investors tasked with deciding whether to purchase RMBS. As securities, representations and disclosures made to prospective buyers of RMBS are regulated by the United States Securities and Exchange Commission ("SEC"). While an oversimplification, the SEC requires that those who undertake to sell securities to the public provide potential investors with truthful financial statements and other significant information. More specifically, the Securities Act of 1933 prohibits deceit, misrepresentations, and other fraud in the sale of securities and requires those offering securities to register the securities and provide offering information to the SEC .

With those obligations in mind, the SEC contends that senior bank employees knew that these poor quality loans were not performing well, but were being bundled into RMBS that they

3

were representing to be high quality securities. It further contends that these same employees produced "Offering Documents and Preliminary Marketing Materials" for what would become Defendants' last RMBS offering – the BOAMS 2008-A securitization.  In those materials, the SEC contends that defendants made representations about the quality of the mortgages collateralizing the BOAMS 2008-A securitization, how the bank originated those mortgages, and the likelihood that the borrowers behind those mortgages would make their scheduled payments in a timely fashion.  The SEC contends that all of these representations were knowingly false. Further, the SEC contends that these employees failed to undertake the required due diligence in researching the performance of the loans underlying the securities.

While the submission of fraudulent offering statements to the public could certainly form the basis of private claims against defendants by those who relied on those statements to their detriment (which is not at issue in this action), the Offering Documents were filed with the SEC and, the SEC contends, were relied on by two "covered institutions": the Federal Home Loan Bank of San Francisco ("FHLB-San Francisco"); and two entities affiliated with Wachovia Bank.  The BOAMS 2008-A Certificates were backed by $855 million in home loans and the purchasers were lead to believe they were purchasing high quality, prime securities. In the end, BOAMS 2008-A suffered significant losses.

The SEC contends that the securitization at issue was simply defendants' way of transferring the risks of these toxic loans to investors in order to avoid any losses associated with the loans comprising BOAMS 2008-A. The SEC alleges that defendants misled potential investors by failing to disclose that seventy-two percent of the mortgages originated in the wholesale channel, as well as the risks associated with those types of loans, and that investors were directed to information in prior RMBS offerings as indicative of the characteristics of BOAMS 2008-A.  Wachovia and FHLB-SF bought approximately ninety-eight percent of the

4

securities offered. On August 6, 2013, the SEC filed this Complaint. The SEC seeks an injunction, civil penalties and other relief for violations of Sections 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) & 77q(a)(3), and Section 5(b)(1) of the Securities Act, 15 U.S.C. § 77e(b)(1).

## III. Discussion

### A. Rule 12(b)(6) Standard

Until 2007, a complaint could not be dismissed under Rule 12(b)(6) unless it appeared certain that plaintiff could prove no set of facts which would support its claim and entitle it to relief. Neitzke v. Williams, 490 U.S. 319 (1989); Conley v. Gibson, 355 U.S. 41 (1957). This "no set of facts" standard was specifically abrogated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), where the Court held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Id., at 563. The Court specifically rejected use of the "no set of facts" standard because such standard would improperly allow a "wholly conclusory statement of claim" to "survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Id., at 561 (alteration in original).

Post Twombly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level." Id., at 555.

> [A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .

Id. (second alteration in original; citation omitted). Further, a complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s] devoid of further factual enhancement."

5

Id., at 557. Instead, a plaintiff must now plead sufficient facts to state a claim for relief that is "*plausible* on its face." Id., at 570 (emphasis added).

While the Court was clear in Twombly that Conley was no longer controlling, it again visited the Rule 12(b)(6) pleading standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court determined that Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Id. at 678. The Court explained that, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" Id. (citing Twombly, supra; emphasis added). What is plausible is defined by the Court:

> [a] claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Id.

This "plausibility standard" requires "more than a sheer possibility that a defendant has acted unlawfully." Id. Thus, a complaint falls short of the plausibility standard where a plaintiff pleads "facts that are 'merely consistent with' a defendant's liability . . . ." Id. While the court accepts plausible factual allegations made in a complaint as true and considers those facts in the light most favorable to plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

In sum, when ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*) (citations omitted). A complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." Id. at 93 (alteration and internal quotation marks

6

omitted). However, to survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. While a plaintiff is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002), "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.

### B. Motion to Dismiss Section 17 Claims

Section 17(a)(2) makes it unlawful for any person, in the offer or sale of securities, to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. 15 U.S.C. § 77q(a)(2). Section 17(a)(3) prohibits any person, in the offer or sale of any security, from engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser. 15 U.S.C. § 77q(a)(3). Claims under these provisions do not require proof of *scienter*. Negligence is sufficient. Aaron v. SEC, 446 U.S. 680, 697 (1980). Defendants contend that the Complaint fails to plead sufficient facts to establish materiality or negligence.

Materiality is determined based upon whether "there is a substantial likelihood that a reasonable purchaser or seller of a security (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." Longman v. Food Lion, Inc., 197 F.3d 675, 683 (4th Cir. 1999). An omission is misleading if it creates an impression of a state of facts that differs in a material way from the one that actually exists. Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002). General disclaimers are insufficient to overcome the effect of more specific

7

material misstatements or omissions. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 851 (11th Cir. 2004).

Judge Cayer held that the Complaint alleges sufficient facts to establish that Defendants negligently made material misrepresentations and omissions here and recommended denying defendants' motion. Defendants have interposed no objections and did not argue against the recommendation at the hearing. Having carefully considered Judge Cayer's recommendation and finding that it is consistent with current case law, adopts such recommendation.

### C. Motion to Dismiss Section 5 Claims

Section 5(b)(1) requires that any "prospectus" communicated in interstate commerce comply with the requirements of Section 10 of the Securities Act. 15 U.S.C. § 77e(b)(1). Specifically, Section 10(b) requires that all prospectuses be filed with the Commission as part of the registration statement. Id. § 77j(b). Section 2(a)(10) of the Securities Act defines "prospectus" broadly to include "any … communication … which offers any security for sale…." Id. § 77(b)(a)(10). Section 2(a)(3) further defines "offer" and "offer for sale" to include "every attempt to offer or dispose of … a security or interest in a security…." Id. § 77(b)(a)(3). Once an investor indicates that it will purchase an asset-backed security, "all materials relating to such class that are or have been provided to such prospective investor … must be filed." Securities Act Rule 426(b) (emphasis added). "Filing also is required of such materials relating to a class of securities, whether or not final terms of all classes had been established, as to which a prospective investor had indicated an interest." Securities Offering Reform, Sec. Act. Rel. No. 33-8591, at p. 118 (2005). Judge Cayer held that the Complaint adequately alleges that defendants violated Section 5 of the Securities Act by disclosing the information about the wholesale channel loans to Wachovia and FHLB-SF who later purchased a portion of BOAMS

8

2008-A in the public offering. It is undisputed that defendants elected not to file this "preliminary information" with the Commission.

Defendants raise two objections to Judge Cayer's Recommendation. First, defendants argue that under 17 C.F.R. § 230.426 they had no obligation to file preliminary loan tapes. Second, defendants contend that even if the loan tapes were required to be filed, the Complaint does not allege that the loan tapes concerned a "security."

As to the First Objection, the language of Rule 426 does require such filing. To read Rule 426 as defendants would read it would make the rule internally inconsistent and is contrary to the disclosure based rules comprising the Securities Act. Rule 426 requires those who offer such securities to file the preliminary loan tapes where they were provided to prospective investors who ultimately indicated an intent to invest in BOAMS 2008-A. More specifically, defendants argue that Rule 426(b) does not apply to the preliminary loan tapes because of the exception provided in Rule 426(c). Rule 426(c) cannot, however, be read without first reading Rule 426(b). United States v. Fisher, 58 F.3d 96, 99 (4th Cir. 1995) (holding that courts must give meaning to all statutory provisions and seek an interpretation that permits them to be read with consistency). When read together, Rule 426(c) clarifies what material is included in the second category of information that must be filed under Rule 426(b). Rule 426(c) simply provides that issuers of securities are not required to file any material provided to prospective investors prior to the finalization of the offering terms if those prospective investors never indicate an intention to invest; however, when a prospective investor indicates an intention to invest, the first category of information is implicated, and that category is governed by Rule 426(b), not Rule 426(c). Thus, Rule 426(c) only applies to information provided to entities that do not indicate an intention to invest. To interpret Rule 426(c) as defendants suggest would

9

encourage mischief in the sale of securities that would ultimately allow issuers a backdoor to providing information to some investors that it did not provide to all investors.  The first objection is overruled.

As to the Second Objection, defendants contend that even if the loan tapes were required to be filed, the Complaint does not allege that the loan tapes concerned a "security." Review of the Complaint does not support such Objection.  The SEC alleged that the loan tapes were "written communications constituting free writing prospectuses under the Securities Act." (Compl. ¶ 187.) The Commission further alleged that a free writing prospectus is an offer to sell a security. (Id. ¶¶ 42-44.) Additionally, the Commission alleged that BOAMS 2008-A was an RMBS, or investment vehicle made up of residential mortgage-backed securities. (Id. ¶¶ 2 & 4.) Finally, the Commission alleged that the preliminary loan tapes concerned "the proposed RMBS transaction that would become BOAMS 2008-A." (Id. ¶¶ 179-182.)  The court finds that these allegations are sufficient to plausibly allege that a security existed when the loan tapes were provided to prospective investors.  As to whether the physical embodiment of BOAMS 2008-A was in existence at the time the offer was made, the SEC has long provided guidance to issuers or potential issuers, as follows:

> the publication of information and publicity efforts, made in advance of a proposed financing which have the effect of conditioning the public mind or arousing public interest in the issuer or in its securities constitutes an offer.

*Guidelines for the Release of Information by Issuers Whose Securities are in Registration*, Securities Act Release No. 5,180, 36 Fed. Reg. 16506 (Aug. 16, 1971). The second objection is overruled.

\*\*\*

10

While overruling each Objection as to the Motion to Dismiss, defendants are not foreclosed from seeking summary judgment at an appropriate time by arguing that the quantum of the government's evidence does not support a finding in favor of the government on such claims.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants Objection (#30) to the Memorandum and Recommendation (#29) is **OVERRULED**, the Memorandum and Recommendation of Judge Cayer is **AFFIRMED** and **ADOPTED**, and the Motion to Dismiss (#14) is DENIED without prejudice as to reasserting such arguments at the appropriate time in the form of a Motion for Summary Judgment.

Signed: June 19, 2014

Max O. Cogburn Jr.
United States District Judge